UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**RENARDO FRED LANE,**

      **Petitioner,**

                                          Case No. 1:02-CV-509
v.                                               Hon. Gordon J. Quist

**KENNETH T. MCKEE,**

      **Respondent.**
_____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

**Background**

Petitioner's conviction arose from the shooting death of Mark Bowser, who, along with Jajuan Williams, was selling crack cocaine from the house of Charles Ellis Jackson. Also present at the house were Jackson's three children and their mother Phyllis Goodwin. *See People v. Renardo Fred Lane*, No. 230169 (Mich. App. Feb. 12, 1999), slip op. at 1-2. A jury convicted petitioner of the following: first-degree felony murder, MCL 750.316; assault with intent to rob while armed, MCL750.89; and two counts of possession of a firearm during the commission of a felony, MCL 750.227b. The assault conviction and the associated felony firearm conviction were subsequently vacated on double jeopardy grounds. Ultimately, petitioner was sentenced to mandatory life imprisonment for the first-degree murder conviction and a consecutive two-year term for the felony-firearm conviction. The Michigan Court of Appeals summarized the background facts as follows:

On the evening of the shooting, defendant came to Jackson's house, recognized Bowser as his cousin, and the two had a conversation in the kitchen. Jajuan overheard defendant say that he intended to rob some dope houses, and Bowser replied that that was "stupid." Phyllis Goodwin overheard defendant say that Bowser was his cousin, and defendant intended to kill him. She went upstairs and told Jackson to get defendant out of the house. Defendant left shortly thereafter.

Jajuan and Bowser then went upstairs and smoked some marijuana. Defendant subsequently returned to the house, went upstairs, and began arguing with Bowser. Jajuan, who had been sleeping, was awakened by the argument. Defendant pointed a gun at Jajuan and told him to get his hands out of his pockets. Defendant then pointed the gun at Bowser and demanded cocaine. Bowser gave his cocaine to defendant. Defendant next demanded money. Bowser said he didn't have any money. Jackson arrived and saw defendant pointing the gun at Bowser. Defendant said he would shoot Bowser in the leg if he refused to turn over his money. Again, Bowser said he had no money. Defendant responded, "I'll give you three seconds." Defendant then shot Bowser, who pulled out a gun and exchanged gunfire. Jajuan jumped behind the bed.

Phyllis Goodwin testified that, from another bedroom, she heard a voice say, "I don't have any money." She recognized defendant's voice and heard him say, "I've only got two minutes. Give it to me, I'll blow your brains out." Then she heard one shot and more quick shots.

After the shooting began, defendant ran out of the house. Bowser was shot in the chest. He tried to go down the stairs but collapsed part-way down. Bowser was dead when the police and medical units arrived.

Willie Holmes, defendant's cousin, testified that on the evening of the shooting, defendant broke into his house and ran into the bedroom where Holmes was sleeping. Defendant looked shocked and surprised. At trial, Holmes testified that defendant told him that he "thinks somebody got shot." According to Detective Walters, however, Holmes gave a statement claiming that defendant stated, "I just shot somebody." Holmes then told defendant to leave his house. Later, Holmes found defendant's jacket in his backyard and threw it in the trash.

*People v. Lane*, No. 203169, slip op. at 1-2.

Petitioner raised the following issues on appeal to the Michigan Court of Appeals:

I. Because the prosecution turned over the forty-five page transcript of an interview with Charles Jackson, a crucial eyewitness, late in the afternoon on the scheduled day of trial, did the Circuit Judge's denial of [petitioner's] motions to adjourn interfere with [petitioner's] rights to confrontation and to present his defense and violate his rights to the effective assistance of counsel and to a fair trial?

II. Did the Circuit Judge reversibly err by denying [petitioner's] request for instruction on manslaughter because the denial prevented the jury from considering a charge supported by the evidence and because [petitioner] was harmed by the denial?

III. Was a police officer's testimony that a witness reported that [petitioner] admitted to shooting someone hearsay and did the admission of the hearsay and the prosecutor's emphasis of that hearsay in argument cause a manifest injustice and violate [petitioner's] right to a fair trial?

IV. Must [petitioner's] conviction be reversed because defense counsel was ineffective in failing to use the forty-five page transcript to impeach the testimony of Charles Jackson and in failing to object to outcome determinative hearsay testimony?

The Michigan Court of Appeals affirmed petitioner's conviction. *People v. Lane*, No. 203169 (Mich. App. Feb. 12, 1999). *See* docket nos. 1, 42.[1] Petitioner filed an application for leave to appeal to the Michigan Supreme Court raising the same four issues, which that court denied. *People v. Lane*, No. 114129 (Mich. Sept. 29, 1999). *See* docket no. 42.

Petitioner filed a motion for relief from judgment in the trial court, which the court denied as frivolous or as decided against petitioner in his original appeal pursuant to MCR

---

[1] The Michigan Court of Appeals cannot locate petitioner's appellate file. *See* docket no. 53. Accordingly, the court has adopted petitioner's version of the four issues raised on appeal in the Michigan Court of Appeals as he set forth in his habeas petition. These issues appear to be consistent with the issues addressed by the Michigan Court of Appeals' decision. In addition, respondent does not disagree with the substance of these issues. *See* Respondent's Answer at 3-4 and fn. 1.

6.508(D)(2). *See* Exh. A attached to respondent's Answer; *People v. Lane*, Calhoun Co. Cir. Case No. 96-1019-FC (Opinion and Order denying motion for relief from judgment, March 6, 2001). Then, petitioner filed a delayed application for leave to appeal to the Michigan Court of Appeals, raising the following issues:

> I. [Petitioner] was denied discovery in violation of Mich Const, 1963 Art 1, § 17 and U.S. Const XIV Am, when it was not disclosed that prosecution's witness had received immunity for testimony given at jury trial.
>
> II. [Petitioner] was denied effective assistance of appellate counsel, guaranteed by US Const VI Am and Mich Const, Art 1 § 20.
>
> III. [Petitioner] was denied effective assistance of counsel, guaranteed by US Const VI Am and Mich Const, Art 1, § 20.
>
> IV. The delay of a key witness' prior recorded statement prejudiced [petitioner] when MCR 6.201(A)(1) mandates disclosure and delay was until eve of trial.
>
> V. [Petitioner] was denied assistance of counsel which is guaranteed by US Const VI Am and Mich Const Art 1 § 20.
>
> VI. [Petitioner] was denied the US Const VI Am right to confrontation when the trial court failed to grant the continuance on the request of counsel severely hampering the defense's ability to cross-examine [the] prosecution's witnesses.

*See* docket no. 43. The Michigan Court of Appeals denied leave to appeal on September 17, 2001 "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D). *People v. Lane*, No. 234107 (Mich. App. Sept. 17, 2001). Petitioner raised the same six issues in his delayed application for leave to appeal to the Michigan Supreme Court. The Michigan Supreme Court denied the application on April 19, 2002, "because [petitioner] has failed to meet the burden

of establishing entitlement to relief under MCR 6.508(D)." *People v. Lane*, No. 120329 (Mich. April 29, 2002).

In his petition for habeas review, petitioner has raised the four issues presented to the Michigan Court of Appeals and the Michigan Supreme Court in his direct appeal:

> I. [Petitioner] was deprived of his rights to: present a defense; have a fair trial; the effective assistance of counsel; due process; and to confrontation as is guaranteed him by Amendments V, VI, and XIV to the United States Constitution when the trial court denied the defense's request for an adjournment of two weeks to investigate information untimely turned over by the prosecution.
>
> II. [Petitioner] was deprived of his rights to due process and a fair trial as is guaranteed him by Amendments V, VI and XIV to the United States Constitution when the trial court denied the defense's request for a jury instruction on manslaughter.
>
> III. [Petitioner] was deprived of his rights to a fair trial as is guaranteed him by Amendments V, VI and XIV to the United States Constitution when the jury was allowed to listen to hearsay offered by both a state's investigating witness and against during the prosecution's closing argument, causing a manifest injustice.
>
> IV. [Petitioner] was deprived of his right to the effective assistance of counsel as is guaranteed him by Amendments VI and XIV to the United States Constitution where defense counsel failed to use a forty-five page transcript to impeach the testimony of Charles Jackson and for failing to object to damaging hearsay testimony.

## Discussion

### I. Standard of Review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254 which provides that a federal district judge "shall entertain an application for a writ of habeas corpus in behalf of a person in custody

pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 405 (2000), the Supreme Court interpreted 28 U.S.C. § 2254(d)(1) as creating a distinction between decisions that are "contrary to" and those that involve an "unreasonable application of" clearly established Supreme Court precedent. *Johnson v. Bell*, 344 F.3d 567 (6th Cir. 2003).

> A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." [*Williams*, 529 U.S. at 405]. A state court decision is also "contrary to" Supreme Court precedent if the state court "applies a rule that contradicts the governing law set forth" in that precedent. *Id.*

*Id.* at 572. On the other hand, an "unreasonable application" of clearly established Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [the Supreme]

6

Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.*, *quoting Williams*, 529 U.S. at 407. "An unreasonable application of law is not, according to the Supreme Court, merely incorrect; rather, 'that application must also be unreasonable.'" *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001), *quoting Williams*, 529 U.S. at 411.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana*, 263 F.3d at 546-47, *quoting Williams*, 529 U.S. at 411. The presumption of correctness accorded to the state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001); *See* 28 U.S.C. § 2254(e)(1).

Before a state prisoner may seek habeas relief in federal court he must first fairly present the substance of his federal claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270 (1971); *Clemmons v. Sowders,* 34 F.3d 352, 354 (6th Cir. 1994); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994). Here, petitioner presented his four habeas issues in his appeal as of right to the Michigan Court of Appeals and in his application for leave to appeal to the Michigan Supreme Court. Accordingly, the court concludes that petitioner has exhausted his four habeas claims.

### III. Petitioner's Habeas claims

#### A. Trial court's refusal to grant two-week adjournment

On the first day of trial, February 25, 1997, the prosecutor announced the discovery of an untranscribed police interview of Charles Jackson.[2] Petition at 6. Defense counsel moved for a two-week continuance to consider the statement, but the trial court only adjourned the trial to the next morning to allow the interview to be transcribed. *Id.* Petitioner's counsel received the 45-page transcript at 5:00 p.m. on February 25th. *Id.* at 6-7. Petitioner's counsel moved for another continuance on February 26th, but the court denied the motion. *Id.* at 7. Petitioner contends that the court's denial of the motion was an abuse of discretion that deprived him of his rights to present a defense, to have a fair trial, to the effective assistance of counsel, to due process and to confrontation as guaranteed by the Fifth, Sixth and Fourteenth Amendments. Respondent does not address the abuse of discretion issue, but relies on the requirement that petitioner has failed to show that he suffered actual prejudice from the denial of the request for a continuance. Answer at 8-9.

The Michigan Court of Appeals addressed this issue as follows:

> On the first day of trial, defendant moved for a two-week continuance in order to review a transcript of Jackson's statement to police. The statement was taken shortly after the incident but was being transcribed just before trial. The court agreed to delay trial for one day. Defendant renewed his request for a two-week continuance the following day, again asserting that he needed more time to properly review the statement and adequately prepare to cross-examine and impeach Jackson. The trial court denied the motion upon finding that nothing in the statement warranted further adjournment and that defendant had ample time to consider the information.

---

[2] The statement transcript is undated. Charles Jackson made the statement to Detective Mullens, allegedly in February 1996. Trial Trans. I at 4-5. The transcript was not part of the lower court record, but the parties stipulated to include it in the record on appeal pursuant to MCR 7.210(A)(4). *See* Stipulation attached to petitioner's application for leave to appeal to the Michigan Supreme Court (docket no. 42).

> Defendant now argues that the trial court abused its discretion in denying his request for an additional continuance, thereby requiring reversal of his convictions. We disagree. Defendant has not demonstrated any prejudice resulting from the trial court's denial of his request. MCL 769.26; MSA 28.1096; *City of Lansing v. Hartsuff*, 213 Mich.App 338, 350-351; 539 NW2d 781 (1995). Jackson did not testify until the third day of trial, thus providing defense counsel with more time to review the transcript and prepare for his cross-examination of Jackson. Also, in his cross-examination of Jackson, defense counsel successfully elicited testimony that Jackson admittedly lied to the police about several facts. Further, considering the overwhelming evidence against defendant, it is highly improbable that the denial of a continuance contributed to the verdict. *People v. Gearns*, 457 Mich. 170, 203-205; 577 NW2d 422 (1998); *see, generally, People v. Minor*, 213 Mich.App 682, 685-686; 541 NW2d 576 (1995). Thus, the trial court's denial of his request for an additional continuance did not deprive defendant of a fair trial. *Hartsuff, supra*.

*People v. Lane*, No. 203169 (Mich. App. Feb. 12, 1999), slip op. at 2.

Not every restriction on an attorney's time or opportunity to investigate, consult with his client, or otherwise prepare for trial violates a defendant's Sixth Amendment right to counsel. *See, Chambers v Maroney,* 399 US 42, 53-54 (1970). Broad discretion must be granted trial courts on matters of continuance. In *Morris v. Slappy*, 461 U.S. 1, 11 (1983), the Supreme Court relied on *Chambers* in recognizing that trial judges require a great deal of latitude in scheduling trials, and that the judge's need to assemble witnesses, lawyers and jurors "at the same place at the same time . . . counsels against continuances except for compelling reasons." *Id.* "Only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Id.*, *quoting Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

In *Powell v. Collins*, 332 F.3d 376 (6th Cir. 2003), the Sixth Circuit addressed the applicable legal standard for a federal habeas claim involving a trial court's failure to grant a continuance:

> The decision whether to grant a motion for continuance is within the discretion of the trial judge. *See Ungar v. Sarafite*, 376 U.S. 575, 589-90, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). Absent proof of a violation of a specific constitutional protection, a habeas petitioner must show that a trial error was so egregious as to deprive him of a fundamentally fair adjudication, thus violating constitutional principles of due process. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988). A petitioner must also show that the denial of his request resulted in actual prejudice to his defense. *See United States v. Moreno*, 933 F.2d 362, 372 (6th Cir.1991). Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefited the defense. *See United States v. Martin*, 740 F.2d 1352, 1361 (6th Cir.1984).

*Powell*, 332 F.3d at 396.  To merit federal habeas relief, petitioner must show that the trial judge's abuse of discretion was so as to deprive him of a fundamentally fair trial and "must also show that the denial of a continuance actually prejudiced his or her defense." *Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004).  *See Powell*, 332 F.3d at 396.

Petitioner contends that the trial court abused its discretion in favor of expeditiousness, apparently because the trial judge stated during the hearing on the first motion to adjourn that "I don't want to adjourn it any longer than necessary."  Memorandum at 9; Mot. Adj. at 7.  Petitioner's recitation of the trial judge's statement is taken out of context.  The trial judge's complete statement was as follows:

> Okay.  Well, the Court believes already there are grounds to grant an adjournment to the defense prior to the beginning of the trial, so that [defense counsel] can see the transcriptions.
>
> And I am not sure that we know exactly how long they are.  Apparently there is no definite time given as to how long or how extensive these transcripts are; nor do we know apparently whether or not there is anything in these statements, once transcribed, that's going to lead to a possibility of other witnesses or something of that nature.
>
> So, under the circumstances, presuming that the transcriptions can be made today, copies of them can be given to [petitioner's counsel] and to his client to review, it seems to me that there is at least a possibility that the review could be

10

> conducted today and tonight, would prepare or allow the defense to prepare for trial tomorrow.
>
> It does not seem to me to be unreasonable to conclude that that may well be the case. And I don't want to adjourn it any longer than is necessary. And if that -- that type of an [adjournment] suffice [sic] to allow [petitioner's counsel] to be properly prepared to defend [petitioner], then I think we just start the trial tomorrow.
>
> If it [turns] out otherwise then, of course, [petitioner's counsel] can put that on the record and tell me why he thinks he needs more time. But I -- I do this in consideration of the fact that a summary of the statements was provided apparently, to the defense in the police reports, and that as I say, we just simply don't know what we're going to see in the transcriptions until they are prepared.
>
> And so presuming they can be done in a timely fashion, furnished to [petitioner's counsel] and his client, with an opportunity for [petitioner's counsel] to discuss that with his client, whatever the statement may contain, I think that would suffice, at least as far as I know or at least possibly at this point.
>
> So what I would do is grant a Motion to Adjourn this case until tomorrow morning, at which time if there is -- if it is found that there is -- there is some need to, for instance, subpoena a witness who is mentioned that nobody knew about in the statement, or something like that, we could deal with that, if that's something that happens.
>
> On the other hand it may not happen, so we give that a try I guess.

Mot. Adj. at 6-8. This was certainly a reasonable approach for the court to take when faced with a problem at trial.

The next day, petitioner asked for an additional continuance because counsel did not have effective time to consult with petitioner, that the transcript was "new and very significant evidence pointing to him," and that the statement should have been provided previously. Trial Trans. I at 5. The new information is apparently Charles Jackson's statement that he saw petitioner shoot the victim and that the victim told Jackson that petitioner was the shooter. *Id.* at 6-7. The prosecution responded that the transcript was not a surprise because (1) Jackson testified at the preliminary examination that he saw petitioner shoot the victim and (2) Jackson told the police in

11

his first interview that the victim's identified petitioner as the perpetrator. *Id.* In denying petitioner's second motion for a continuance, the court observed that it did not "find anything in this particular piece of information that would cause an adjournment." Trial Trans. I at 8.  The court observed that this information added nothing to either the prosecution's theory or any possible defense, that the information did not produce a need for further witnesses or for the defense to explore further information, and that the transcript was "simply an additional piece of information." *Id.* at 8-9.

Based this record, I find the Michigan appellate court properly resolved this issue in concluding that the court did not abuse its discretion in denying petitioner's request for a two-week continuance.  The trial court's decision was not so unreasoned or arbitrary as to violate petitioner's constitutional rights.  Rather, the court explained its reasons for denying the request, observing that this statement, though newly discovered, added nothing to either the prosecution or the defense's theory of the case and appeared cumulative of other statements made by the witness.  Petitioner does not claim that the transcript identified unknown witnesses or unknown factual evidence that required further investigation. Petitioner simply makes a conclusory assertion that the trial court abused its discretion in favor of expeditiousness.

Furthermore, even if the trial judge had abused his discretion, petitioner is not entitled to habeas relief because he was not prejudiced by the trial court's denial of his motion for a continuance.  Petitioner's counsel had sufficient time to review the transcript.[3] The lower court

---

[3] Respondent's answer incorrectly cites the chronology of the relevant testimony. First, Charles Jackson, the subject of the transcript, did not testify on February 27th as stated by respondent. Answer at 9; Trial Trans. II at 168-79. The "Charles Jackson" that testified on February 27th was the son of the Charles Jackson that gave the transcribed statement to the police. Trial Trans. II at 168-79; Trial Trans. Excerpt at 55-56.  Second, the court did not adjourn on the afternoon of February 28th as stated by respondent, rather it recessed at about 11:54 a.m. and re-convened at about 1:42 p.m. Answer at 9; Trial Trans. III at 102; Trial Trans. Excerpt (Feb. 28, 1997) at 3.  The elder Charles Jackson commenced his testimony on the afternoon

record indicates that the trial court adjourned the trial on February 25th, that petitioner's counsel received a 46-page transcript of Jackson's statement at 5:00 p.m. that day, and that petitioner's counsel moved to adjourn the trial on the morning of February 26th.  Motion to Adjourn. at 1-10; Trial Trans. I at 3.  The prosecutor did not present Jackson's direct testimony until Friday, February 28th, and petitioner's counsel commenced his cross-examination later that day.  Trial Trans. Excerpt (Feb. 28, 1997) at 56-121.  The trial was in recess until Tuesday, March 4th, when petitioner's counsel resumed the cross-examination.  Trial Trans. IV at 4-29, 33-35.  Based in this chronology, petitioner's counsel had the evenings of February 25th through 28th and three entire days from March 1st through March 3rd, to review Jackson's transcript and prepare for the cross-examination.

        In addition, petitioner's counsel performed an extensive cross-examination of Jackson, during which counsel elicited testimony that severely impeached his credibility: that Jackson lied to the first police officer regarding the presence of Jajuan Williams in the room where petitioner was shot; that Jackson consistently lied to the officer in stating that there were three rather than four people in the room; that Jackson lied to Detective Adams about dealing drugs with Mark Bowser out of Jackson's house; that Jackson made inconsistent statements to Adams regarding his drug habit; that Jackson lied to the police when he denied that he was letting people sell drugs out of his house, when in fact Jackson was receiving $100 a day for allowing the sales at his house; that Jackson did not necessarily tell the truth to three detectives that interviewed him shortly after the shooting; and that Jackson first told the police about selling drugs from his house and of Jujuan

---

of Friday February 28th.  Trial Trans. Excerpt at 55-56.  Finally, respondent incorrectly states that petitioner's counsel did not commence the cross-examination of the elder Charles Jackson until Tuesday March 4th, having several days to prepare for the cross-examination.  Answer at 9.  In fact, petitioner's counsel commenced the cross-examination on Friday, February 28th and then resumed the cross-examination on Tuesday, March 4th.  Trial Trans. Excerpt at 93-120; Trial Trans. IV at 4-29, 33-35.

Williams' presence on or about April 16th (almost two months after the shooting). Trial Trans. Excerpt at 99, 100-03, 106-09; Trial Trans. IV at 6-8, 12-14, 18-19. Given this record, petitioner's defense was not prejudiced by the trial court's denial of petitioner's second motion for a continuance.

The Michigan Court of Appeals properly found that the trial court's denial of petitioner's motion for a continuance did not deprive petitioner of a fair trial. The appellate court's resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

### B.     Trial court's denial of request for voluntary manslaughter instruction

Petitioner was convicted of first degree felony murder, MCL 750.316. Now, he contends that the trial court violated his rights to due process and a fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments, when the court denied his request for a jury instruction on the lesser cognate offense of manslaughter, MCL § 750.321. Memorandum at 18-24. The Michigan Court of Appeals rejected petitioner's claim on state law grounds:

> Next, defendant argues that the trial court erred by denying his request for an instruction on voluntary manslaughter. We disagree. When requested by a party, a standard jury instruction must be given if it is requested, applicable, and accurately states the law. MCR 2.516(D)(2). Where the facts do not warrant an instruction, however, the trial court need not give it. *People v. Piper*, 223 Mich. App 642, 648; 567 NW2d 483 (1997). We agree with the trial court that the evidence did not support an instruction on voluntary manslaughter. Viewed most favorably to defendant, the facts do not establish the required element of provocation necessary to support an instruction for manslaughter. *People v. Hess*, 214 Mich. App 33, 38; 543 NW2d 332 (1995). Accordingly, the trial court did not err in refusing to instruct the jury on voluntary manslaughter.

*People v. Lane*, No. 203169, slip op. at 2-3.

Petitioner's claim is not cognizable on habeas review. "Although the Supreme Court has held that it is a violation of due process for a court to fail to instruct on a lesser included offense supported by the evidence in a capital case, *see Beck v. Alabama*, 447 U.S. 625, 627, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), it has not so held in noncapital cases." *Scott v. Elo*, 332 F.3d 598, 606 (6th Cir. 2002). Thus, the Constitution does not require courts to give lesser included offense instructions in non-capital cases. *See Campbell v. Coyle*, 260 F.3d 531, 540-41(6th Cir. 2001); *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (trial court's failure to instruct on a lesser included offense in a noncapital case is "not such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure"). Petitioner had no federal constitutional right to a jury instruction for voluntary manslaughter. Accordingly, this claim should be denied.

### C.     Admission of hearsay testimony

Next, petitioner contends that was deprived of his rights to a fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments when the jury was allowed to listen to hearsay evidence. Specifically, a prosecution witness, Detective Walters, testified that another prosecution witness, petitioner's cousin Willie Holmes, told Walters that petitioner admitted to shooting somebody. Memorandum at 25-26. Walters' testimony was apparently offered to impeach Holmes' earlier testimony (1) that "He [petitioner] was telling me that he thinks somebody got shot," and (2) that Holmes denied telling Detective Walters that petitioner said "I just shot somebody." Trial Trans. III at 47, 49-50, 54. Petitioner contends that the prosecutor used Walters' hearsay testimony as substantive evidence during the closing argument, i.e., that Holmes told police that petitioner admitted to Holmes that "I shot somebody." Trial Trans. V at 30-31, 71.

The Michigan Court of Appeals addressed the hearsay issue as follows:

> Next, defendant argues that the trial court erred when it allowed Detective Walters to testify that Willie Holmes told him defendant said, "I just shot somebody." Because defendant did not object to this testimony at trial, review of this issue is foreclosed absent manifest injustice. *People v. Welch*, 226 Mich.App 461, 463; 574 NW2d 682 (1997). Here, the testimony was offered to impeach Holmes' earlier testimony wherein Holmes claimed defendant had merely stated that he "thinks somebody got shot." Moreover, the exception set forth in *People v. Stanaway*, 446 Mich. 643, 692-693; 521 NW2d 557 (1994), to the general rule that evidence of a prior inconsistent statement may be admitted to impeach a witness, even though the statement tends directly to inculpate the defendant, is not applicable here.
>
>> The rule set forth in *People v. Stanaway* is that the impeachment should be disallowed when (1) the substance of the statement purportedly used to impeach the credibility of the witness is relevant to the central issue of the case, and (2) there is no other testimony from the witness for which his credibility was relevant to the case. [*People v. Kilbourn*, 454 Mich. 677, 682-683; 563 NW2d 669 (1997).]
>
> Because Holmes' credibility is relevant to his other proffered testimony regarding finding a jacket he believed to be defendant's in his backyard and regarding his broken back door, Detective Walters' impeachment testimony was proper. *Kilbourn, supra*. Accordingly, manifest injustice will not result from our failure to review this issue.

*People v. Lane*, No. 203169, slip op. at 3.

Respondent contends that this claim is procedurally defaulted. An appellate court's review of an unpreserved claim under a "manifest injustice" standard is considered procedurally defaulted for purposes of federal habeas review. *See Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989). "Controlling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules." *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nevertheless, this court will address the merits of petitioner's claim. "[J]udicial economy sometimes dictates reaching the merits if the merits are more easily resolvable against a petitioner while the

procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1161-62 (8th Cir. 1999) (internal citations omitted), *citing Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997). *See also*, *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999) (magistrate judge properly decided the case on the merits where procedural default issue raised more questions than the merits of the case); *Johnson v. Warren*, 344 F.Supp.2d 1081, 1089 (E.D. Mich 2004) (given complexity of determining procedural default, court addressed claims on the merits). *Cf.* 28 U.S.C. § 2254(b)(2) (permitting a federal court to deny a habeas petition on the merits notwithstanding the applicant's failure to exhaust state remedies).

Under Michigan law, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). At the time of petitioner's conviction, the standard for determining whether the admission of hearsay evidence violated the Confrontation Clause was set forth in *Ohio v. Roberts*, 448 U.S. 56 (1980).[4] In *Roberts*, the Supreme Court held that when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that the declarant is unavailable, and, even if unavailable, the declarant's statement is admissible only if it bears adequate "indicia of reliability." *Roberts*, 448 U.S. 62-73. However, the rule announced in *Roberts* does not apply because the declarant, Holmes, was present at the trial. Where a hearsay

---

[4] In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court abrogated the "indicia of reliability" test in *Roberts*, and concluded that "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford*, 541 U.S. at 58-60, 68-69; *Dorchy v. Jones*, 398 F.3d 783, 788 (6th Cir. 2005). However, because "newly promulgated rules of criminal procedure do not apply retroactively to cases on collateral review," the Sixth Circuit has held that a federal habeas review of a hearsay admission issue, which was decided by the state courts while *Roberts* was in force, is reviewed under the rule announced in *Roberts. Dorchy*, 398 F.3d at 788, *citing Teague v. Lane*, 489 U.S. 288, 305-11 (1989). In the present case, the Michigan appellate courts concluded their direct review of petitioner's claim in 2001, while the *Roberts* rule was still in force.

declarant is subject to cross-examination at trial, the declarant's out-of-court statement does not create a confrontation clause problem under *Roberts* because "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." *United States v. Owens*, 484 U.S. 554, 560 (1988). *See also California v. Green*, 399 U.S. 149, 162 (1970) ("where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem"). Accordingly, the admission of Holmes' hearsay statements to Detective Walker did not implicate petitioner's constitutional rights.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

### D. Ineffective assistance of trial counsel

Finally, petitioner contends that was deprived of his right to the effective assistance of counsel as is guaranteed him by the Sixth Amendment where defense counsel failed to use the transcript to impeach the testimony of witness Charles Jackson and for failing to object to Holmes' damaging hearsay testimony. The Michigan Court of Appeals addressed this issue as follows:

> Finally, we conclude that defendant was not denied the effective assistance of counsel. *People v. Ginther*, 390 Mich. 436, 443-444; 212 NW2d 922 (1973); *People v. Barclay*, 208 Mich.App 670, 672; 528 NW2d 842 (1995). In the absence

of a *Ginther* hearing,[5] we find that the record does not support defendant's contention that counsel's performance fell below an objective standard of reasonableness or deprived him of a fair trial. *People v. Stewart (On Remand)*, 219 Mich.App 38, 42; 555 NW2d 715 (1996); *Barclay, supra.*

*People v. Lane*, No. 203169, slip op. at 3.

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court set forth a two-prong test to determine ineffective assistance of counsel: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690. "The Constitution does not guarantee every defendant a successful defense." *Moran v. Triplett*, No. 96-2174, 1998 WL 382698 at *3 (6th Cir. 1998), *citing Strickland*, 466 U.S. at 690. Neither does the Constitution guarantee petitioner "an excellent lawyer" or a "good lawyer." *Id.* at *5, *citing Strickland*, 466 U.S. at 687. Rather,

> the Sixth Amendment right to the effective assistance of counsel entitles [petitioner] to nothing more than a "reasonably competent attorney" whose performance falls "within the range of competence demanded of attorneys in criminal cases."

*Id*. A trial counsel's tactical decisions are particularly difficult to challenge when claiming ineffective assistance of counsel. *See McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996);

---

[5] "*Ginther* authorizes the creation of a record to support claims which the defendant 'wishes to urge on appeal...' *Ginther*, 212 N.W.2d at 925." *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004).

*O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994). Accordingly, petitioner must "overcome a presumption that the challenged action might be considered sound trial strategy." *Id.*

Petitioner's claims are without merit. As the court previously discussed, petitioner was not prejudiced by either the cross-examination of Charles Jackson or the hearsay testimony of Willie Holmes. Petitioner has failed to demonstrate that counsel's alleged errors prejudiced the defense. *Strickland,* 466 U.S. at 687. Accordingly, petitioner's trial counsel was not constitutionally ineffective.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

### **Recommendation**

I respectfully recommend that petitioner's habeas petition be dismissed. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated:  May 10, 2005              /s/ Hugh W. Brenneman, Jr.
                                  Hugh W. Brenneman, Jr.
                                  United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).